**CHICAGO AREA VENDING EMPLOYERS ASSOCIATION, Plaintiff,**

v.

**LOCAL UNION NO. 761, a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Custom Coffee Service, Defendants.**

**No. 83 C 0614.**

United States District Court,
N.D. Illinois, E.D.

May 9, 1983.

Norman R. Buchsbaum, Jackson, Lewis, Schnitzler & Krupman, Baltimore, Md., Ted E. Bandstra, Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

Henry M. Thullen, Vedder, Price, Kaufman & Kammholz, William A. Widmer, III, Carmell, Charone & Widmer, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

This action is brought by a multiemployer bargaining association, the Chicago Area Vending Employers Association ("Association") against Local Union No. 761, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 761") and Custom Coffee Service ("CCS"). The gist of the three count complaint is that CCS, a member of the Association, improperly and independently contracted with Local 761 to withhold pay raises promised to CCS' employees under the terms of the collective bargaining agreement between the Association and Local 761. The Association seeks to enforce under federal law the terms of the collective bargaining agreement. The complaint also includes pendent claims for breach of contract and tortious interference with contractual relations. Relief is sought in the nature of specific performance, an injunc-

tion, declaratory judgment, back pay, liquidated damages, punitive damages, costs and attorneys' fees. Jurisdiction is alleged under section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended 29 U.S.C. § 185, 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 and 2202.

### Facts

The Association is an Illinois nonprofit corporation comprised of eight separate employers engaged in the vending machine industry in the Chicago metropolitan area. It is an "employer" in or affecting commerce within the meaning of section 152(2) of the LMRA. CCS is a charter member of the Association and the Association alleges that CCS had not severed its membership at any time relevant to this lawsuit. Local 761 is a "labor organization" within the meaning of section 152(5) of the LMRA and the designated bargaining agent of the employees of the constituent members of the Association.

The Association was formed in 1978 to negotiate and administer collective bargaining agreements with Local 761. Incident to its formation and purpose, each member entered into an Association Agreement and executed a Power of Attorney, appointing the Association as its collective bargaining agent to Local 761. The Association Agreement specifies the rights and duties of the Association and its members which, in pertinent part, include:

### ARTICLE III

### EXECUTIVE COMMITTEE

*Section 7.* The committee is empowered . . .

(a) To negotiate and sign a collective bargaining agreement . . . between the Union and the members of the Association. Such . . . agreement shall cover all the members' employees represented by the Union and shall be binding upon all members of the Association.

\* \* \* \* \* \*

### ARTICLE V

### COLLECTIVE BARGAINING BY THE ASSOCIATION

*Section 3.* The members agree not to individually, either directly or indirectly, negotiate, discuss, agree to sign, or sign any agreement with the Union . . . including interim agreements, concerning any matter under a collective bargaining agreement with the Union.

\* \* \* \* \* \*

### ARTICLE VI

### ENFORCEMENT OF AGREEMENT

*Section 1.* . . . The promises, undertakings and agreements herein contained are a contract by each member not only in favor of the Association but also expressly for the benefit of every other signatory. It is understood and agreed by all members that any member who violates or fails or refuses to perform, obey, or carry out any of the above promises, undertakings and agreements violates the entire purpose and objectives of the Association and seriously and irreparably damages the Association and its members.

*Section 3.* Any alleged violation of this Agreement may be submitted to arbitration . . . .

\* \* \* \* \* \*

*Section 6.* Because great and irreparable damage to the Association and its members will result from the violation by any member of the provisions of this Agreement, the Committee may bypass arbitration and may, by action in any court having jurisdiction, apply for and secure an injunction against any violation of this Agreement.

\* \* \* \* \* \*

### ARTICLE VII

### WITHDRAWAL AND REVOCATION OF MEMBERSHIP

*Section 1.* A member may withdraw from membership upon written notice to the Chairman . . . and the Union at

any time between the ninetieth and sixtieth day prior to the expiration of any collective bargaining agreement negotiated by the Association. Any improper withdrawal shall not relieve such member from its obligations under this Agreement.

The Association negotiated a three year collective bargaining agreement with Local 761, which is effective until September 30, 1984. That agreement provides for a general wage increase of fifty cents an hour to begin October 1, 1982. It further recites that

[n]o Employer, or employee, either orally or in writing, shall enter into any arrangement for contracts or agreements that are contrary to this contract and the [Association] Agreement without written agreement between Employer and the Union.

\*     \*     \*     \*     \*     \*

[s]hould any difference arise out of the Agreement between the Employer and the Union concerning other than discharge or discipline . . . such difference shall be submitted to an impartial arbitrator . . . . [The] decision shall be final and binding on all parties.

\*     \*     \*     \*     \*     \*

[the] Agreement is made and entered into between the . . . Association acting for and on behalf of the companies . . . listed . . ., hereinafter referred to collectively and individually as the "Employer" or "Employers."

Sometime prior to the October 1, 1982 wage increase, the Association alleges that CCS and Local 761 made a separate agreement. That agreement allegedly postponed the increase to CCS' employees until June 1983 or some other date between October 1, 1982 and the expiration of the current collective bargaining agreement. The Association argues that since CCS never withdrew from the Association and neither CCS nor Local 761 secured a release from the Association, the side agreement between CCS and Local 761 violates the collective bargaining agreement and the Association Agreement.

Presently before the Court are separate motions to dismiss brought by CCS and Local 761. Neither CCS nor Local 761 disputes the existence of their agreement to postpone the wage increase to CCS' employees or that CCS withheld such a pay raise. Rather, CCS alleges that its president Edward Hurley sent written notification on August 18, 1982 to the Chairman of the Association resigning its membership "effective immediately." A copy of a letter purporting to be CCS' resignation is attached to its pleading.

The Association claims that no withdrawal occurred because (1) no member or officer of the Association received either the original or a copy of the alleged letter of resignation and (2) the letter, even if sent, was untimely since withdrawal is permitted only in the narrow window between ninety and sixty days prior to the expiration of the collective bargaining agreement. The instant agreement will not expire until September 30, 1984. Therefore, the attempted withdrawal allegedly was premature.

CCS and Local 761 also raise a number of jurisdictional grounds in support of their respective motions to dismiss. CCS argues lack of subject matter jurisdiction because the Association may not sue one of its members under section 301(a) and the NLRB has exclusive primary jurisdiction to determine issues concerning withdrawal from multiemployer bargaining units; no claim is stated for which relief can be granted because the Association failed to exhaust its arbitration remedy under the collective bargaining agreement; and without federal question jurisdiction, the pendent claims must be dismissed. Similarly, Local 761 argues that subject matter jurisdiction is lacking because the Norris-LaGuardia Act, 29 U.S.C. § 104, prevents injunctive relief against Local 761, the NLRB has exclusive primary jurisdiction over issues of withdrawal from multiemployer bargaining units and refusals to bargain and the Association failed to arbitrate its differences under the collective bargaining agreement; and the pendent claims must fall if there is no justiciable federal claim.

For the reasons stated below, this Court finds that it can assert jurisdiction over CCS under section 301(a) and that jurisdiction is not preempted by the NLRB. The Court, however, also finds that the Association failed to arbitrate with Local 761 and CCS as provided for in the collective bargaining agreement. The Association's failure to exhaust its contractual grievance remedy requires dismissal of the section 301 action. Since no federal question remains before the Court, the pendent claims will not be retained. The remaining issues are moot. Accordingly, both motions to dismiss are granted. The entire matter is dismissed with prejudice.

### Discussion

#### A. Section 301 Jurisdiction Over CCS

■ CCS argues that section 301(a) will not permit this Court to assert jurisdiction over it. Section 301(a) of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

The majority of section 301(a) suits are between the employer signatory of a collective bargaining agreement and the union signatory. Unquestionably, the Court has traditional section 301(a) jurisdiction over Local 761. The suit is between an employer and a union, each of which signed the agreement as parties thereto. Conversely, the Association's claim against CCS for breach of the Association Agreement is not actionable under section 301(a). That agreement was not made between an employer and a labor organization. The question here, however, is whether section 301(a) may be read expansively to allow one employer, the Association, to sue another, CCS, for violation of a collective bargaining agreement.

In *Smith v. Evening News Association,* 371 U.S. 195, 200–201, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962), the Supreme Court rejected a narrow reading which would restrict section 301(a) only to "suits" between employers and unions. The Court held instead that the word "between" in section 301(a) refers to "contracts" between employers and unions and not to "suits" between them. *See also Republic Steel Corp. v. Maddox,* 379 U.S. 650, 657 n. 13, 85 S.Ct. 614, 618 n. 13, 13 L.Ed.2d 580 (1965). In keeping with its policy of liberal construction of section 301, *see Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957), the Court permitted an employee to sue to claim his rights under the collective bargaining agreement. "To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law." 371 U.S. at 200, 83 S.Ct. at 270.

Despite *Smith,* CCS argues that this suit is precluded by the Seventh Circuit's recent opinion in *Loss v. Blankenship,* 673 F.2d 942 (7th Cir.1982). Although acknowledging that the word "between" in section 301 might only refer to the *contract* between employer and union and not to *suits* between those parties, the Seventh Circuit held that section 301(a) does not permit suits against nonparties. *Smith* was distinguished as "clearly limited to a situation in which the employee nonparty was a *plaintiff* under § 301(a)." *Id.* at 947 n. 3 (emphasis in original). Blankenship was a defendant. He was not a party to a collective bargaining agreement, but a consultant hired by the employer to assist in an attempt to decertify the union. The plaintiffs, who also were nonparty employees, alleged that Blankenship fostered anti-union sentiment among the workers, causing them to reject a proposed collective bargaining agreement and to strike. The strike allegedly prompted the employer to repudiate the proposed agreement and to unilaterally implement different terms of employment.

The *Loss* court found that plaintiff workers who allege wrongdoing by their employer's agents are amply protected by section 301(b) of the LMRA which makes the employer responsible for his agents' improper acts. " 'The Act [at § 301(a) ] was not designed to impose personal liability on employees of corporate organizations.' " *Id.* at 948, quoting *Ramsey v. Signal Delivery Service, Inc.,* 631 F.2d 1210, 1212 (5th Cir.1980).

The *Loss* decision banning nonparties from section 301(a) suits was based in part on an earlier decision, *Baker v. Fleet Maintenance,* 409 F.2d 551 (7th Cir.1969). In *Baker,* employee truck drivers sued their employer and Sears, Roebuck and Company alleging wrongful discharge in violation of a collective bargaining agreement. Although Sears initially hired the workers and promised them benefits, Sears "undisputably ... was not a party to the collective bargaining agreement which was the basis of the plaintiffs' claim." *Id.* at 554.

The Seventh Circuit also discussed the Third and Ninth Circuit decisions in *Nedd v. United Mine Workers,* 556 F.2d 190 (3d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978), and *Rehmar v. Smith,* 555 F.2d 1362 (9th Cir.1976). *Nedd* and *Rehmar* allowed nonparty employees to sue, under section 301(a), nonparty trustees of pension funds established by collective bargaining agreements for the benefit of plaintiff employees. However, *Loss* was distinguished from *Nedd* and *Rehmar,* and described as "fairly limited to suits owing a 'fiduciary duty to the plain-

tiff.' " 673 F.2d at 948, quoting *Nedd v. United Mine Workers,* 556 F.2d 198 n. 13. In one respect the instant case is akin to *Nedd* and *Rehmar:* CCS has forged a fiduciary relationship with the Association by executing a power of attorney to the Association for collective bargaining purposes.

More importantly, this case is unlike *Loss v. Blankenship* or *Baker v. Fleet Maintenance.* The multiemployer bargaining scheme raises an entirely different set of questions and considerations than those addressed by the Seventh Circuit or other jurisdictions. Clearly, CCS is an employer under the terms of the collective bargaining agreement. The definition of employer set out in its first paragraph subsumes both the Association and its constituent members collectively and individually. And yet, CCS technically is not a signatory to the agreement.[1] But, it arguably is a party thereto. CCS is bound to uphold the terms of the agreement and the agreement is made expressly for the benefit of CCS' employees. CCS also announced that if it violated the collective bargaining agreement (or the Association Agreement), the Association's members would be disadvantaged. The corollary of CCS' pledge is that CCS' employees and the other members' employees are potentially although disparately harmed by unilateral action by CCS. But, CCS' employees, unlike those in *Loss,* probably cannot sue the Association for CCS' alleged breach under section 301(b). CCS arguably

---

1. The Court received as an exhibit an unexecuted copy of the collective bargaining agreement between the Association and Local 761. Beneath the line provided on which the Association, as employer, was to sign, are additional lines under the caption "by." Thus, CCS actually may have signed the agreement for the Association. If so, this case is somewhat analogous to *International Union of Operating Engineers, Local 653 v. Bay City Erection Co.,* 300 F.2d 270 (5th Cir.1962). The employer in *Bay City* sued a local union under section 301 for breach of a no-strike clause in a collective bargaining agreement. The agreement was between the employer and a trade council which represented constituent local unions. The plaintiff recovered damages against the local and the local appealed. On appeal, the local

argued, *inter alia,* that it could not be liable for breach of contract under section 301 since only the trade council had signed the agreement. The Fifth Circuit affirmed the jury award against the local union, holding that although not actually a signatory, the local union nevertheless could be held liable for breach of the agreement since the trade council had explicitly signed the agreement as the authorized representative of the constituent locals. *Id.* at 271–72. *Cf. Carpenters Local Union 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489 (5th Cir.1982) (section 301(a) jurisdiction unavailable over nonsignatory defendants where signatory defendants and agreement specifically stated that only the signatory constituent members of a contractors' association were bound).

is not an agent of the Association in a section 301(b) sense.

Perhaps the best characterization of a multiemployer bargaining suit of this type is *sui generis*. It is not a traditional employer-versus-union controversy as contemplated by section 301. Neither does this case run afoul of the Seventh Circuit's *Loss* decision which prohibited nonparty plaintiffs from suing a nonparty defendant who had no interest in or obligation under the collective bargaining agreement and had a federal remedy against the employer for the putative nonparty defendant's acts. The conflict here is within the scheme of section 301(a): it arises from a contract between an employer and a union. Although CCS has not signed the contract, it is a party to and bound by that contract.

If jurisdiction over CCS is denied, the Association has a state court remedy. It can sue CCS for breach of the collective bargaining agreement and the Association Agreement. The Association's claims against Local 761, arising from the identical occurrence as do its claims against CCS, however, are actionable under federal law. Contradictory dispositions possibly might issue from the two forums. By extending section 301(a) jurisdiction over CCS the congressional policy of uniformity in the accomplishment of collective bargaining is assured.

## B. The NLRB Does Not Have Primary Exclusive Jurisdiction in this Matter

■ Despite protests by the defendants, it is settled that the Association's possible alternative remedy before the NLRB does not prevent a suit for enforcement of the collective bargaining agreement under section 301(a). In such cases, the federal district court has concurrent jurisdiction with the Board. *Smith v. Evening News Association, supra,* 371 U.S. at 197, 83 S.Ct. at 268–69. *See also Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). Here no proceeding on this matter is pending before the NLRB. Furthermore, the Court cannot guess how

an unfair labor practice charge might be brought to the NLRB under the facts of this case. In order to encourage multiemployer bargaining, the NLRB permits a union to bring an unfair labor charge where a member of a multiemployer bargaining association unilaterally seeks to change the rules. *See, e.g., NLRB v. Coletti Color Prints, Inc.,* 387 F.2d 298, 302–04 (2d Cir. 1967) (employer member refused to sign a collective bargaining agreement executed by association and union and the union complained). But, unlike the union in *Coletti Color,* Local 761 does not protest CCS' attempted withdrawal from the Association. Rather, it acquiesces in the withdrawal.

The cases cited which hold that the NLRB has exclusive primary jurisdiction to determine a proper bargaining unit or a failure to bargain, are inapplicable. Those questions are not before this Court. *See, e.g., South Prairie Construction Co. v. Local 627, International Union of Operating Engineers,* 425 U.S. 800, 96 S.Ct. 1842, 48 L.Ed.2d 382 (1976) (per curiam); *Computer Sciences Corp. v. NLRB,* 677 F.2d 804 (11th Cir.1982); *NLRB v. Sheridan Creations, Inc.,* 357 F.2d 245 (2d Cir.1966); *Oil, Chemical & Atomic Workers International Union v. Standard Oil of Indiana,* 529 F.Supp. 184 (N.D.Ill.1981). Unlike those cases, this suit considers an *employer* bargaining unit and not an *employee* bargaining unit. The certified bargaining unit for CCS' employees has not been reordered and their designated bargaining agent Local 761 has not been ousted by any of the actions alleged in this complaint.

## C. Exhaustion of the Contractual Remedy of Arbitration

■ Although this suit theoretically is proper under section 301(a), unhampered by a superior right in the NLRB, the action nevertheless must be dismissed: the Association did not attempt to exhaust the grievance mechanism under the collective bargaining agreement. Having sought to assert jurisdiction over CCS under federal

law, the Association is bound by the whole of federal law relevant to its claims.

It is federal law that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). The mandate issued by the Supreme Court to effect that law is that the dispute resolution mechanisms chosen by parties are to be given full play and are not to be judicially usurped. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976); *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). If a party sidesteps the grievance machinery by suing in federal court without having attempted to invoke the grievance mechanism, the claim must be dismissed. *Republic Steel Corp. v. Maddox, supra.*

An arbitration clause in a collective bargaining agreement does not necessarily mean that every dispute under the contract must be arbitrated. The disputed issue must be contemplated by the arbitration clause and not excluded thereunder. *See United Steelworkers v. American Manufacturing Co., supra; United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp., supra.* The presumption, however, is for arbitrability. "Unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation which covers the asserted dispute," arbitration should not be denied. *United Steelworkers v. Warrior & Gulf Navigation Co., supra* at 582, 80 S.Ct. at 1353.

The Association concedes that its dispute with Local 761 is arbitrable but argues against exhaustion because any remedy that the arbitrator could award would be imperfect. This is because, the Association says, CCS cannot be forced to join in the arbitration proceeding. The Association is incorrect. First, the Court finds that CCS is a proper party to such arbitration. The collective bargaining agreement defines "the Employer" as the Association *and* the signatory companies individually and collectively. The arbitration clause in the agreement states that "[s]hould any difference arise out of this Agreement between *the Employer* and the Union concerning other than discharge or discipline which cannot be adjusted ... such difference shall be submitted to an impartial arbitrator ... [whose] decision shall be final and binding upon *all parties.*" (emphases added). CCS is "the Employer" according to the agreement's definitional section.

It would be illogical for the Court to simultaneously find, by examining the identical sections and recitations of the agreement, that CCS was a party to the agreement at large but not a party to its very broad arbitration clause. Except for excluding grievances related to discharge or discipline, the arbitration clause exempts no issue which arises from the agreement or no party from its reach. Certainly there is no dispute that the agreement provides for a raise of fifty cents an hour to be paid as of October 1, 1982. Accordingly, a failure of an employer to implement that increase arises under the agreement. The Court cannot "with positive assurance" find that CCS' participation in the binding arbitration of this dispute is not required.

Furthermore, whether CCS can be coerced to arbitrate and be bound by any decision made between the Association and Local 761 is a moot question. CCS agrees to do so. If the Association prevails before the arbitrator, the arbitrator can nullify the agreement between Local 761 and CCS. It can direct Local 761 to abrogate that agreement and order CCS to implement the pay raise under the terms of the collective bargaining agreement. The Association would remain free to pursue damages against CCS and Local 761 for common law breach of

contract or tortious interference with contract. If, however, the Association loses, this entire matter will be resolved.[2] Either way, a speedy resolution of whether and when CCS must pay its employees more money would be affected.

Accordingly, the Court finds that

(1) There is section 301(a) subject matter jurisdiction over CCS;

(2) The NLRB does not have exclusive primary jurisdiction over the issues in dispute;

(3) CCS is a party to the collective bargaining agreement and obligated to arbitrate grievances arising thereunder; and

(4) The Association did not try to arbitrate its grievances with CCS and Local 761;

IT IS THEREFORE ORDERED that

(1) The motions to dismiss are granted for failure to state claims for which relief may be granted. Fed.R.Civ.P. 12(b)(6);

(2) The pendent claims for breach of contract by CCS and tortious interference with contractual relations by CCS and Local 761 are dismissed in the absence of a cognizable federal claim;

(3) The other issues are moot; and

(4) The entire matter is dismissed with prejudice.

---

**2.** Of course, the parties can bring a new action in this Court to seek enforcement or vacation of the arbitrator's award within the confines of the *Steelworkers* Trilogy, *supra. See also Chicago Cartage Company v. International Brotherhood of Teamsters, Local 710,* 659 F.2d 825 (7th Cir.1981); *Mogge v. District 8, International Association of Machinists,* 454 F.2d 510 (7th Cir.1971).