**SPRAGUE IRON WORKS, Plaintiff,**

v.

**Donald J. URBAUER, Sr., et al., Defendants.**

**No. 84 C 3071.**

United States District Court, N.D. Illinois, E.D.

March 14, 1985.

John A. Cook, Mary J. Walsh, Barbara P. Landwehr, Chicago, Ill., for plaintiff.

John August Cook, P.C., Robert A. Lewinthal, Fred Sudak & Associates, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Defendant Shopmen's Local 473 of the International Association of Bridge Structural and Ornamental Iron Workers ("Local 473") is the exclusive bargaining representative of the manufacturing employees at Sprague Iron Works ("Sprague").[1] Plaintiff Sprague fabricates steel used in construction projects. In the spring of 1983, Sprague and Local 473 tried unsuccessfully to reach agreement on a new collective bargaining agreement. On May 1, 1983, upon the expiration of its previous collective bargaining agreement with Sprague, Local 473 went on strike. Sprague hired replacements for the striking manufacturing employees and continued its manufacturing operation.

In addition to its manufacturing activities, Sprague also installs or "erects" its steel products for general building contractors at various construction sites. To perform the erection work, Sprague hires members of Local 1 of the International Association of Bridge Structural and Reinforcing Iron Workers ("Local 1"). Local 1 represents employees of other erection contractors as well as those employed by Sprague.

On June 1, 1983, Local 1 entered into a collective bargaining agreement with the Associated Steel Erectors of Chicago ("ASEC"), a multi-employer bargaining group. Sprague is a member of the ASEC and through the ASEC has a contractual relationship with Local 1. The contract has a "no-strike" provision which states:

Paragraph A. It is mutually agreed that there shall be no strikes authorized by the Union or no lockouts authorized by the Employer, except for the refusal of either party to submit to arbitration....

Paragraph B. *Every facility of each of the parties hereto is hereby pledged to immediately overcome any such situation,* provided, however, it shall not be a violation of any provision of this agreement to refuse to cross or work behind the picket line of any affiliated union which has been *authorized by the international of that union, the central labor council or building or construction trades council.*

Complaint, ¶ 11 (emphasis added).

On February 4, 1984, Local 473 picketed a construction site where Local 1 members

---

1. Donald J. Urbauer, the President and Representative of Local 473, is also named as a defendant. For convenience, this opinion refers only to Local 473 as the defendant.

were to begin erecting Sprague steel. As a result of the picketing, Local 1 members refused to work, thereby effectively shutting down Sprague's operation at the site. The owner of the premises engaged another erection contractor to take over the work and charged Sprague for the cost of the substitute. ·

Sprague brought suit in the Circuit Court of Cook County, Illinois against Local 473 for Local 473's alleged tortious interference with Sprague's contract with Local 1. Tortious interference is a state common law claim.

In its complaint, Sprague charges that officials of Local 473 conspired with the officials of Local 1 to coerce Local 1 members to honor Local 473's picket line. According to Sprague, Local 1's refusal to work constitutes a breach of the no-strike provision of the collective bargaining agreement between Sprague and Local 1. Specifically, the breach occurred when Local 1 officials failed to "facilitate" an end to the Local 1 walk-out. In addition, Sprague alleges that Local 473's picket line was not authorized by the International Association of Bridge Structural and Ornamental Iron Workers, by the Central Labor Council, or by the Building and Construction Trades Council. Sprague alleges that Local 1 violated its contract by honoring an unauthorized picket line.

Defendant Local 473 timely petitioned to remove the state action to federal court. Presently pending before this Court is the plaintiff Sprague's motion to remand this case to state court. Sprague asserts that this case states only a state law claim against Local 473 for tortious interference with contract and thus was not removable under 28 U.S.C. § 1441(b).

No federal question is presented on the face of the complaint. The defendant argues, however, that the conduct at issue is protected by federal labor law, and thus a federal question is at issue.[2]

██ As a general rule, a federal court does not have original federal question jurisdiction over a case in which the complaint on its face presents only a state law claim. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). A state law claim is not transformed into one involving a federal question on its face simply because the defendant raises a federal question as a defense. 103 S.Ct. at 2851; *Illinois v. Kerr-McGee Chemical Corp.*, 677 F.2d 571, 578 (7th Cir.1982), *cert. denied*, 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982).

██ In *Avco Corp. v. Aero Lodge No. 735 International Association of Machinists*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), however, the Supreme Court announced an exception to the general rule that the federal question must appear on the face of a well-pleaded complaint. The Court held that the preemptive force of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), is so powerful that it entirely displaces any state cause of action for violation of contracts between an employer and a labor organization. *See also Franchise Tax, supra* 103 S.Ct. at 2854 ("*Avco* stands for the proposition that if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."). The issue, therefore, is whether Section 301(a) applies to the instant case. This Court holds that it does not.

Although Section 301(a) has been broadly interpreted by other courts to apply to suits not involving the actual parties to a labor contract,[3] the Seventh Circuit has

---

2. In essence, although not articulated in these terms, the defendant argues that the plaintiff's state law cause of action is preempted by federal labor law. Thus, the federal question is presented as a defense to the state law claim.

3. *Smith v. Evening News Association*, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) (suit brought by an employee against his employer, alleging a breach of the collective bargaining agreement between the employee's union and the employer); *Nedd v. United Mine Workers*, 556 F.2d 190 (3d Cir.1977), *cert. denied*, 434 U.S.

construed Section 301(a) narrowly. In *Loss v. Blankenship*, 673 F.2d 942, 946–47 (7th Cir.1982), the Seventh Circuit held that Section 301(a) applies only to suits by actual signatories of the labor agreement allegedly breached.[4] *Cf. Chicago Area Vending v. Local Union No. 761*, 564 F.Supp. 1186 (N.D.Ill.1983), *aff'd*, (7th Cir.1984).[5] Under *Chicago Vending*, plaintiff Sprague is bound by the contract of the ASEC with Local 1 because plaintiff is a "signatory" to that contract. By contrast, defendant Local 473 is in no sense a "signatory" to the contract between the ASEC and Local 1.

Because the instant case does not fall within Section 301(a) under *Loss*, the *Avco* exception does not apply. This case, therefore, cannot be removed to federal court because it is not within the ambit of Section 301(a) and because no federal question appears on the face of the complaint. Accordingly, this case is remanded to state court. It is so ordered.

1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978) (suit by a trustee of pension fund established by collective bargaining agreement for the benefit of employees); *Rehmar v. Smith*, 555 F.2d 1362 (9th Cir.1976) (suit by widow of union member against trustees of pension fund to recover survivor's benefits allegedly due her under collective bargaining agreement.); *Alvares v. Erickson*, 514 F.2d 156 (9th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975) (suit by union members against pension fund trustee).

4. The court distinguished *Smith* as being clearly limited to the situation in which an individual employee sought to vindicate individual rights. *Loss* at 947 n. 3. *See also Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551, 554 (7th Cir.1969) (complaint failed to state a claim against a party who is not a party to the collective bargaining agreement).

5. In *Chicago Area Vending v. Local Union No. 761*, 564 F.Supp. 1186 (1983), *aff'd*, —— F.2d ——, (7th Cir.1984), the court held that it did have jurisdiction over a suit between a nonsignatory and a union for breach of contract. In *Chicago Area Vending*, an association of em-

ployers reached an agreement with Local 761. Defendant CCS was a member of the employer association. The association brought suit against CCS and against Local 761 for entering into a separate agreement, thereby violating the agreement between Local 761 and the association. The court held it had jurisdiction over the suit under Section 301(a), even though the suit involved CCS, technically a non-signing party. The court reasoned that although the suit did not involve a "traditional employer-versus-union controversy as contemplated by section 301," the case did not run afoul of *Loss* which prohibited "non-party plaintiffs from suing a non-party defendant who had no interest in or obligation under the collective bargaining agreement and had a federal remedy against the employer for the putative non-party defendant's acts." According to the court, "the conflict ... is within the scheme of section 301(a): it rises from a contract between an employer and a union. Although CCS has not signed the contract, it is a party to and bound by that contract [as a member of the multi-employer bargaining group]." *Id.* at 1192.