Jane LOSS, et al., Plaintiffs-Appellants,

v.

**Rayford T. BLANKENSHIP,
Defendant-Appellee.**

No. 80–2845.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 30, 1981.

Decided March 12, 1982.

Rehearing Denied April 22, 1982.

---

1. Under 29 C.F.R. § 2530.200b–3(e)(1)(ii), each week of employment is the equivalent of 45 hours of service.

Daniel M. Katz, Connerton & Bernstein, Washington, D. C., for plaintiffs-appellants.

Loren J. Comstock, Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS, Chief Circuit Judge, SPRECHER, Circuit Judge, and CAMPBELL, Senior District Judge.*

SPRECHER, Circuit Judge.

This is an appeal from an order dismissing a class action complaint which alleged violations of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et seq.*, and tortious interference with contract under Indiana common law. We hold that dismissal of the federal claim for failure to state a claim under the LMRA was proper. We find, however, that the district court retained diversity jurisdiction over the common law claim and, accordingly, we remand that portion of the case for further proceedings.

I

The plaintiffs in this case are the employees of Mark Twain Marine Industries, Inc.'s, West Frankfort, Illinois, facility ("Mark Twain") and the employees' union, Local Union No. 87 of the Laborer's International Union of North America, AFL–CIO ("Local 87"). The plaintiff class comprises the entire membership of Local 87, and all within the class are Illinois citizens. The defendant, Blankenship, is an Indiana citizen.

Local 87 has been the collective bargaining representative of Mark Twain's maintenance and production employees since 1969. Mark Twain hired Blankenship in November of 1978, allegedly to help the company induce the decertification of Local 87.[1] At

---

* Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

1. In a suit filed against Mark Twain on November 1, 1979, Blankenship sought recovery of fees allegedly earned as a "labor relations expert" with Mark Twain. Among his duties, claimed Blankenship, was to attempt to "unseat and decertify" Local 87. Mark Twain denied liability and counterclaimed, asserting that Blankenship had solicited employment as a lawyer despite the fact that he is not admitted to practice law in any state. Mark Twain claimed to have paid Blankenship $18,000 for legal services which were to have been performed, and sought to recover that sum on the ground that Blankenship was unable to provide the services promised.

The plaintiffs in this suit moved to intervene in the suit between Mark Twain and Blankenship in order to assert the rights raised in this

the time Blankenship was hired, a collective bargaining agreement was in force between Local 87 and Mark Twain, but was to expire on February 2, 1979.

The plaintiffs allege that Blankenship fostered anti-union sentiment among the workers at Mark Twain and that his actions resulted in the employees' rejection of a proposed collective bargaining agreement which had been reached on January 31, 1979, between Local 87 and Mark Twain. As a result, Local 87 struck Mark Twain on February 2, 1979. Mark Twain responded by unilaterally implementing its contract proposals and repudiating the collective bargaining agreement it had reached with Local 87. Despite Local 87's unconditional offer to return to work, the strike did not end until May 4, 1979, when Mark Twain reestablished its collective bargaining relationship with Local 87.

Local 87 filed charges with the National Labor Relations Board on February 9, 1979, and a final complaint was issued April 10, 1979. This complaint alleged that Mark Twain had violated Sections 8(a)(1), (3), and (5) of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* After a hearing, the administrative law judge in an opinion issued on June 30, 1980, found that various acts by Mark Twain constituted unfair labor practices. Among these were acts attempting to foster anti-union sentiment, which were taken by Blankenship, who was found to have been an agent of Mark Twain. The administrative law judge issued a final order providing for back pay and benefits, reinstatement of all workers, and injunctive relief against similar future conduct. The administrative law judge's order was affirmed by the National Labor Relations Board, and an action for enforcement is pending.

On July 16, 1980, the individually-named plaintiffs and Local 87 brought this action against Blankenship in federal district court for the Southern District of Indiana on behalf of a class composed of all employees of Mark Twain's West Frankfort, Illinois, plant. The first count of the complaint sought damages and injunctive relief under § 301(a) of the LMRA, 29 U.S.C. § 185(a). Jurisdiction of this claim was asserted under 28 U.S.C. § 1337.[2] The second count alleged common law tortious interference with contract. Jurisdiction was asserted both under diversity, 28 U.S.C. § 1332, and pendent jurisdiction.

The district court granted Blankenship's motion to dismiss the complaint on December 1, 1980. The court held that the LMRA count failed to state a claim against Blankenship, because he was not a party to the collective bargaining agreement upon which the complaint was based. Absent the federal claim, the court found no reason to exercise pendent jurisdiction over the tortious interference with contract claim and, accordingly, dismissed the second count of the complaint. The court, however, did not consider diversity as a basis for jurisdiction over the common law claim.

## II

### A

▉ The first count of the plaintiffs' complaint, alleging that Blankenship's actions in creating anti-union sentiment violated § 301(a) of the LMRA, was dismissed for failure to state a claim upon which relief could be granted. Where a defendant moves to dismiss a complaint for failure to state a claim, the general rule is that the complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99,

---

complaint. However, on June 16, 1980, Blankenship and Mark Twain stipulated to the dismissal of their respective claims, and the district court dismissed the complaint and counterclaim with prejudice on June 19, 1980.

**2.** 28 U.S.C. § 1337 provides that "[t]he district courts shall have original jurisdiction of any

civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies." Jurisdiction under § 1337, therefore, was dependent upon a finding that an action against Blankenship could properly be brought under § 301(a) of the LMRA.

101–102, 2 L.Ed.2d 80 (1957). We agree with the district court that the plaintiffs' LMRA complaint falls within this description. The allegations in the complaint establish that Blankenship is not a party to the collective bargaining agreement. Thus, he is not within the class of persons who may be subject to liability under § 301(a).

■ Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

It is unclear whether the term "between an employer and a labor organization representing employees" refers to who may be party to a suit or to what types of contracts are actionable. In any event, however, courts construing the statute have held that § 301(a) does not provide the basis for an LMRA claim *against* a nonparty to the underlying collective bargaining agreement. Thus, Blankenship cannot be sued under the LMRA.

This case is governed by this circuit's decision in *Baker v. Fleet Maintenance, Inc.*, 409 F.2d 551 (7th Cir. 1969). There, truck drivers sued their employer and another company, Sears, alleging wrongful discharge in violation of their collective bargaining agreement with their employer. Although Sears had been involved in the initial hiring of the workers and had promised them various benefits, the court upheld the district court's ruling that Sears could not be made a defendant in the § 301 suit:

It is our opinion that this section 301 suit failed to state a claim against Sears *for the reason that* it undisputedly appears from the pleadings, affidavits, and the contract in issue that *Sears was not a party to the collective bargaining agreement* which was the basis of the plaintiffs' claim.

*Id.* at 554 (emphasis added). Thus, the court clearly based its affirmance of summary judgment on Sears' "non participation in the collective bargaining agreement." *Id.*

■ Similarly, in this case, Blankenship was not alleged to have been a party to the collective bargaining agreement that formed the basis of the § 301 claim. Rather, he was simply alleged to have been employed by one of the parties to the agreement. Thus, under *Baker*, the complaint lacked allegations which would bring Blankenship within the scope of § 301(a), and thus failed to state a claim for which relief could be granted. *See Fabian v. Freight Drivers & Helpers Local 557*, 448 F.Supp. 835, 838 (D.Md.1978) ("It is axiomatic, however, that a § 301 suit may be brought only against those who are parties to the contract in issue."). *Accord, Bowers v. Ulpiano Casal, Inc.*, 393 F.2d 421, 423 (1st Cir. 1968); *Carpenter's Local 1846 v. Pratt-Farnsworth Inc.*, 511 F.Supp. 509, 511–12 (E.D.La.1981); *Martin v. Parkhill Pipeline, Inc.*, 364 F.Supp. 474, 477 (N.D.Ill.1973).

A remarkably similar complaint was rejected by the Fifth Circuit in *Ramsey v. Signal Delivery Service, Inc.*, 631 F.2d 1210 (5th Cir. 1980). There, union members sought to bring suit against an employer and various employees, alleging that they had conspired to mislead the plaintiffs as to company rules and policies, with the ultimate purpose of inducing an illegal work stoppage so as to permit the hiring of replacements for the plaintiffs. The court refused to permit an action against the employees under § 301 of the LMRA because "§ 301 suits are confined to defendants who are signatories of the collective bargaining agreement under which they are brought ... [T]he Act was not designed to impose personal liability on employees of corporate organizations." *Id.* at 1212 (footnote omitted). Similarly, the plaintiffs here seek to hold an employee, Blankenship, liable for conduct inducing a strike. We agree with the reasoning of the *Ramsey*

court and hold that this complaint was not actionable under § 301(a).[3]

The scheme of liability under the LMRA further supports our conclusion. Where the plaintiffs allege wrong-doing by an agent of the employer, § 301(b) of the LMRA, 29 U.S.C. § 185(b), provides that the employer will be held liable.[4] The plaintiffs' complaint alleged that Blankenship was an agent of Mark Twain. Thus, under § 301(b) they had a LMRA remedy against the employer.[5] This clear assignment of liability to the employer for the type of wrong alleged in this case argues against an exception to the general rule

that non-parties to the collective bargaining agreement cannot be sued under the LMRA.

This availability of a remedy against the employer serves to distinguish this case from the cases cited by the plaintiffs in which the Third and Ninth Circuits have permitted suits against non-parties to the collective bargaining agreement underlying the actions. *See Nedd v. United Mine Workers,* 556 F.2d 190 (3d Cir. 1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 757 (1978); *Rehmar v. Smith,* 555 F.2d 1362 (9th Cir. 1976); *Alvares v. Erickson,* 514 F.2d 156 (9th Cir.), *cert. denied,* 423

3. The plaintiffs contend that *Smith v. Evening News Association,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962), precludes a ruling that the complaint against Blankenship was not actionable under § 301 of the LMRA. *Smith* involved a suit brought by an employee against his employer, alleging a breach of the collective bargaining agreement between the employee's union and the employer. The Court ruled that, although the employee was not a party to the agreement, he could nevertheless maintain a suit under § 301(a). The Court thus rejected a reading of the statute which would restrict actions under § 301(a) of the LMRA to suits between unions and employers.

The *Smith* Court's decision, however, was clearly limited to the situation in which an employee was a *plaintiff* under § 301(a). Thus, the Court rested its interpretation of § 301 on "the congressional policy expressed in that section." *Id.* at 200, 83 S.Ct. at 270. The Court noted that

The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do.

*Id.* The scope of the Court's decision, therefore, was limited to the rights of employees *to bring suit* to enforce collective bargaining agreements.

Although employees are not, strictly speaking, parties to collective bargaining agreements, the statute is clearly enacted for their

benefit and labor organizations gain their standing under the statute only by "representing employees." Thus, the *Smith* Court recognized that employees, as the intended beneficiaries of the LMRA, should be able to bring suit to enforce their rights. There is, however, no concomitant justification for asserting jurisdiction over suits *against* non-parties under the LMRA. The distinction we draw between suits brought by non-party plaintiffs under the LMRA and suits against non-party defendants is, therefore, appropriate.

4. Section 301(b), 29 U.S.C. § 185(b), provides that "[a]ny labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents."

5. This reading of § 301(b) to suggest a limitation upon suits against defendants who are not parties to the collective bargaining agreement is further supported by language in *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960). There, the Supreme Court held that a union's breach of its promises under a collective bargaining agreement would not, absent an express agreement, relieve an employer of its duty to contribute to an employee welfare fund established by the collective bargaining agreement. The Court held that language in § 301(b) "evidences a congressional intention that the union as an entity, *like a corporation,* should in the absence of agreement be the sole source of recovery for injury inflicted by it." *Id.* at 470, 80 S.Ct. at 495 (emphasis added). The emphasized language suggests that the *Lewis* Court believed that § 301(b) also precluded liability under § 301(a) from attaching to employees of an employer who is a party to the collective bargaining agreement underlying the suit.

U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). In each of these cases, the courts noted the need for suit under § 301(a) to prevent violations of the collective bargaining agreement from going unremedied. *Rehmar v. Smith*, 555 F.2d at 1370 (remedy of suit against union "may be wholly inadequate to protect the employee or his dependents"). *See also Nedd v. United Mine Workers*, 556 F.2d at 197–98; *Rehmar v. Smith*, 555 F.2d at 1367; *Alvares v. Erickson*, 514 F.2d at 163. They are thus inapplicable to the situation here.

■ Furthermore, these cases involved suits against trustees of pension funds established by collective bargaining agreements for the benefit of employees. Despite some broad language, these decisions advance the narrow principle that "a nonparty to the original instrument . . . is entitled to press for performance of obligations undertaken for his benefit." *Nedd v. United Mine Workers*, 556 F.2d at 197 n.10. Thus, these decisions can fairly be limited to suits against one owing a "fiduciary duty" to the plaintiff. *Id.* at 198 n.13. *See*

*Rehmar v. Smith*, 555 F.2d at 1367; *Alvares v. Erickson*, 514 F.2d at 162–63 n.3.[6]

We hold, therefore, that a complaint for interference with a collective bargaining agreement, against a non-party to that agreement, is not actionable under § 301(a) of the LMRA. Thus, the district court properly dismissed the first count of the plaintiffs' complaint.

### B

The second count of the plaintiffs' complaint, alleging common law tortious interference with contract, was also dismissed by the district court. The complaint asserted jurisdiction for this claim under the doctrine of pendent jurisdiction and 28 U.S.C. § 1332(a), providing for federal court jurisdiction in diversity cases. Having decided that no federal claim existed under the LMRA, the trial court found no basis for pendent jurisdiction over the common law claim. Although we agree that dismissal of the federal claim precluded pendent jurisdiction,[7] we find that the trial court erred

---

**6.** The only case which we have found permitting actions under § 301 against non-party defendants outside the trustee-beneficiary context is *Wilkes-Barre Publishing Co. v. Newspaper Guild Local 120*, 647 F.2d 372 (3d Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982). There, the court permitted an action by an employer against a non-party competitor for inducing a breach of a collective bargaining agreement. While we do not concur in the broad holding of that case, we note that there the employer was faced with a situation in which joining the competitor in the action was necessary to insure that a remedy would be provided under § 301(a). Here, on the other hand, Mark Twain is, under the clear language of § 301(b), responsible for damages stemming from Blankenship's actions.

Furthermore, we disagree with the court's suggestion in *Wilkes-Barre* that tortious interference with contract must fall within § 301 because no independent state law remedies exist for tortious interference with labor contracts. 647 F.2d at 380–81. Such a conclusion is inconsistent with the Supreme Court's statement in *Boys Markets, Inc. v. Clerks Local 770*, 398 U.S. 235, 245, 90 S.Ct. 1583, 1589, 26 L.Ed.2d 199 (1970), "that the congressional purpose embodied in § 301(a) was to *supplement,* and not to encroach upon, the pre-existing jurisdiction of the state courts." *Accord, Charles Dowd Box Co. v. Courtney*, 368 U.S.

502, 511, 82 S.Ct. 519, 524, 7 L.Ed.2d 483 (1962).

The *Wilkes-Barre* court based its finding that no independent state court remedies existed upon the need for uniformity in determining the scope of obligations under collective bargaining agreements. 647 F.2d at 381. This need was enunciated in *Local 174, Int'l Bhd. of Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 102–04, 82 S.Ct. 571, 576–577, 7 L.Ed.2d 593 (1962). We fail to see, however, in what way the need for uniformity dictates a holding that tortious interference with contract is actionable under § 301. The *Lucas Flour* Court based its decision on the fact that, if collective bargaining agreements were construed differently under state and federal law, "neither *party* could be certain of the rights which it had obtained or conceded." *Id.* at 103, 82 S.Ct. at 576 (emphasis added). Requiring suits against non-parties for tortious interference with contract to be brought under state law, however, will not "exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.* Parties to the collective bargaining agreement will still be able to have their respective obligations to one another determined by federal law.

**7.** Pendent jurisdiction, by definition, requires the existence of a federal claim to which the state law claim can attach. Because, as we

in failing to recognize the existence of diversity jurisdiction over the common law claim.

■ Diversity jurisdiction requires complete diversity between the parties and satisfaction of the jurisdictional amount. The individually named plaintiffs in this case, as well as those in the plaintiff class, were all alleged to have been Illinois citizens. Local 87's citizenship is determined by the citizenship of each of its members.[8] *United Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146–47, 86 S.Ct. 272, 273, 15 L.Ed.2d 217 (1965); 3A Moore's Federal Practice ¶ 17.25 at 17–271 (2d ed. 1979). The complaint properly alleged that all of Local 87's members were Illinois citizens. 2A Moore's Federal Practice ¶ 8.10, at 8–68 (2d ed. 1981) ("where jurisdiction is founded upon diversity the citizenship of the individual members must, nevertheless, be alleged, and their citizenship must be wholly diverse from that of the opposing party"). As Blankenship is an Indiana citizen, complete diversity existed between the plaintiffs and Blankenship. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The jurisdictional amount requirement of 28 U.S.C. § 1332(a) was met by an allegation that more than $10,000 was in controversy.[9]

■ Blankenship, however, advances two arguments in support of the proposition that the requirements for diversity jurisdiction were not met. First, he alleges that complete diversity is lacking because the entire membership of the Laborer's International Union of America, AFL–CIO, must be considered in determining the citizenship of Local 87. Second, he claims that the amount in controversy could not exceed $10,000. We reject both arguments.

First, Blankenship argues that diversity jurisdiction cannot be invoked in this case because the International Union may have members in Indiana. This argument is based on the premise that a local derives its citizenship from its international, rather than existing as a separate jurisdictional entity. We can find no support for this proposition. The citizenship of a union for diversity purposes is the citizenship of each of its members. *United Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146–47, 86 S.Ct. 272, 273, 15 L.Ed.2d 217 (1965). The named party here is Local 87. Under Indiana law it is permitted to sue and be sued in its own name. The injury inflicted here was a particularized one, affecting only the workers at Mark Twain's West Frankfort plant. There is perfect identity between the plaintiff class and Local 87's membership. Thus, the matters at issue here concern only Local 87. This is not a situation where a local is representing its international in order to establish favorable jurisdiction. In light of these facts, we can see no reason to look beyond the citizenship of Local 87's members in determining diversity. *Cf. Fabian v. Freight Drivers & Helpers Local 557*, 448 F.Supp. 835, 838 (D.Md.

---

note above, no claim is stated under § 301(a) of the LMRA, pendent jurisdiction is inappropriate here. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

8. The question of whether Local 87 can properly be a party to a suit in federal court on a state law claim is governed by Fed.R.Civ.P. 17(b), which provides that the capacity to sue of an unincorporated association, such as a union, is determined by the law of the state in which the district court is sitting. Rule 17(E) of the Indiana Rules of Trial Procedure specifically provides that "an unincorporated association may sue or be sued in its common name."

9. Under *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973), each member of the plaintiff class must be able

to assert damages of $10,000 where they bring "separate and distinct claims." Where, however, " 'several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.' " *Id.* (quoting *Troy Bank v. G. A. Whitehead & Co.*, 222 U.S. 39, 40–41, 32 S.Ct. 9, 56 L.Ed. 81 (1911)). It is not clear from the complaint whether the plaintiffs seek to aggregate their damages or instead assert that the named plaintiffs, members of the plaintiff class, and Local 87 suffered damages in excess of $10,000. Since this issue was not raised before this court, it is properly considered by the district court on remand.

1978) (under § 301 of LMRA, an international union is not *"per se* responsible for the conduct of a local which is a collective bargaining agent").

This position is supported by *Sweeney v. Hiltebrant,* 373 F.2d 491 (6th Cir. 1967). There, the court determined the citizenship of a local union for diversity purposes by looking to the citizenship of *the local's* members. The court found that "the local, a voluntary unincorporated association with Ohio members, must also be regarded as an Ohio citizen for diversity purposes." *Id.* at 492. *Accord, Local 1 (ACA) Broadcast Employees v. International Brotherhood of Teamsters,* 614 F.2d 846, 853 (3d Cir. 1980) (drawing distinction between a local and its international). Similarly, Local 87, as a voluntary unincorporated association with only Illinois members, must be considered an Illinois citizen.[10]

■ Blankenship's second argument against diversity jurisdiction over the common law claim is that the plaintiffs have not properly asserted that $10,000 is in controversy. First, Blankenship suggests that the plaintiffs' complaint alleges only that they have suffered $10,000 in damages by reason of violations of the LMRA, and does not independently allege the jurisdictional amount under 28 U.S.C. § 1332(a). This reading of the complaint, however, is unjustified. The complaint sets forth seventeen paragraphs in the first count, alleging that the actions of Blankenship constituted a violation of the LMRA and caused the plaintiffs to be damaged in excess of $10,-000. The second count consists of two paragraphs. Paragraph eighteen incorporates by reference all previous allegations, and paragraph nineteen claims that "Blankenship's *conduct complained of herein* consti-

tutes a tortious interference with the contractual rights of Plaintiffs under the common law." (emphasis added). Imperfections in pleading style will not divest a federal court of jurisdiction where the complaint as a whole reveals a proper basis for jurisdiction. *Rohler v. TRW, Inc.,* 576 F.2d 1260, 1264 (7th Cir. 1978). It is clear from the language of the complaint that the plaintiffs assert that Blankenship's conduct caused damage of $10,000 or more, and was actionable *either* under the LMRA or common law. This allegation met the requirements of 28 U.S.C. § 1332(a).

Blankenship next argues that the requisite monetary claim under § 1332(a) cannot be made because any claims of the plaintiff class have already been satisfied by the relief ordered by the administrative law judge in the unfair labor practice proceedings against Mark Twain. Thus, Blankenship contends, no further amount is in dispute.

■ All that is needed at the pleading stage to satisfy the jurisdictional amount requirement is a good-faith allegation that $10,000 or more is in controversy. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–89, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); 1 Moore's Federal Practice ¶ 0.92[1] (2d ed. 1981). "The basic criterion for determining whether the amount sought was not made in good faith is if it can be concluded beyond a legal certainty that the plaintiff would under no circumstances be entitled to recover the jurisdictional amount." *Risse v. Woodard,* 491 F.2d 1170, 1173 (7th Cir. 1974). Furthermore, "[w]hen the issue of jurisdictional amount is intertwined with the merits of the case, 'courts should be careful not to decide the merits,

**10.** Blankenship directs our attention to a proposal of the American Law Institute which suggests that, under 28 U.S.C. § 1332, unincorporated associations should be treated as corporations in determining their citizenship for diversity purposes, but that they should not be able to bring diversity actions in states in which they maintain "local establishments." American Law Institute, Study of The Division of Jurisdiction Between State and Federal Courts: Proposed Final Draft No. 1 11 (1965).

A review of the commentary following that proposal, however, indicates that the proposal was intended to exclude labor unions from those unincorporated associations which would be precluded from suing in states where they had "local establishments." This was done in recognition of the fact that a greater degree of "autonomy" frequently exists between local unions and their internationals than is the case with other unincorporated associations. *Id.* at 74.

under the guise of determining jurisdiction, without the ordinary incidents of a trial.' " *Johns-Manville Sales Corp. v. Mitchell Enterprises, Inc.*, 417 F.2d 129, 131 (5th Cir. 1969) (quoting *Continental Casualty Co. v. Department of Highways*, 379 F.2d 673, 675 (5th Cir. 1967)).

A review of the complaint in light of these standards reveals that it adequately alleges the jurisdictional minimum. Blankenship failed to demonstrate that recovery of more than $10,000 on the state law tort claim would necessarily be precluded by the relief granted by the administrative law judge in the unfair labor practice proceeding. The plaintiffs' complaint seeks compensatory, injunctive, and punitive monetary relief. It is not at all clear to what extent compensatory relief would necessarily duplicate the back pay and reinstatement awards which were issued by the administrative law judge and directed against Mark Twain. Similarly, it is not clear that injunctive relief would necessarily be the same in either case. Finally, the punitive damage demand is limited to the second count of the complaint. Punitive damages are properly considered in determining whether the jurisdictional minimum was alleged. *By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956, at 960–961 (7th Cir. 1982). Because we cannot say to a legal certainty that the plaintiffs' state tort claim will not support a recovery of $10,000 or more, we find that the jurisdictional amount was properly alleged.[11]

### III

We find, therefore, that the district court properly dismissed the plaintiffs' claims under § 301(a) of the LMRA. Diversity jurisdiction, however, was properly alleged over the claim for common law tortious interference with contract, and dismissal of that claim was therefore improper. Accordingly, the order of the district court is Affirmed in part, Reversed in part, and Remanded for proceedings consistent with this opinion.

11. Because we cannot say that the plaintiffs will be precluded from further relief, we reject Blankenship's assertion that the entire com-

plaint is moot in light of the relief granted by the National Labor Relations Board.