Anthony Bruce CAPALBO, Anthony Mario Capalbo, Donald F. D'Antonio, Dale Destree, Richard Destree, Dave Ibarra, Gary Larocco, John A. Larocco, Dimitri Manolis, George Manolis, Georgia Manolis, Robert J. Nedza, Victor C. Ramirez, Lawrence S. Sowa, Albert S. Tucker, Koji Yaguchi, and Thomas Rhyan, Plaintiffs,

v.

PAINEWEBBER, INCORPORATED, a Delaware Corporation, and Jeffrey Gallagher, Defendants.

No. 86 C 9421.

United States District Court, N.D. Illinois, E.D.

Aug. 25, 1988.

Edward S. Margolis, Keith A. Ligon, Leo Feldman, Teller, Levit & Silvertrust, P.C., Chicago, Ill., for plaintiffs.

Michael B. Roche, L. Andrew Brehm, Jeffrey B. Lieberman, Schuyler, Roche & Zwirner, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Plaintiffs previously brought a nine count amended complaint against defendants, PaineWebber Incorporated ("PaineWebber") and Jeffrey Gallagher. Defendants moved to strike and dismiss. The court granted that motion in part and denied it in part, granting leave to amend. *See Capalbo v. PaineWebber, Inc.,* 672 F.Supp. 1048 (N.D.Ill.1987) (*"Order"*). Plaintiffs brought a second amended complaint, withdrawing several counts, and defendants again move for dismissal. For the following reasons, the motion is granted in part and denied in part.

 On a motion to dismiss, the allegations of the complaint as well as the reasonable inferences to be drawn from them are taken as true. *Doe v. St. Joseph's Hosp.,* 788 F.2d 411 (7th Cir.1986). The plaintiff need not set out in detail the facts upon which a claim is based, but must allege sufficient facts to outline the cause of action. *Id.* The complaint must state either direct or inferential allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Mescall v. Burrus,* 603 F.2d 1266 (7th Cir.1979). The court is not required to accept legal conclusions either alleged or inferred from pleaded facts. *Carl Sandburg Village Condominium Ass'n No. 1 v. First Condominium Development Co.,* 758 F.2d 203, 207 (7th Cir.1985). Dismissal under Rule 12(b)(6) is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Papapetropoulous v. Milwaukee Transport Services, Inc.,* 795 F.2d 591, 594 (7th Cir.1986).

The facts of this case are set out in the *Order.* They are briefly summarized as follows. Plaintiffs allege that Gallagher, a registered securities salesman and agent of PaineWebber, solicited their investment in brokerage accounts by making certain representations concerning his qualifications as an investment broker and his ability to earn an average of 10% per month on investments. Eventually, plaintiffs' investments suffered great losses, and plaintiffs brought this action.

Counts I and IA of the second amended complaint allege violations of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. Counts V and VA allege that defendants engaged in "churning" in violation of Sections 10(b) and 15(c)(1) of the 1934 Act, 15 U.S.C. § 78*o* (c)(1). Counts VI and VIA allege common law fraud, and Count VIIA alleges breach of contract. Count IX alleges violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). Count X alleges violations of the Illinois Consumer Fraud and Deceptive Business Practices Act., Ill.Rev. Stat. ch. 121–½, ¶ 261 *et seq.* Finally, Count XI alleges breach of fiduciary duty by PaineWebber. The court will consider each of these counts in a completely random sequence.

*Churning Claims*

 The *Order* dismissed plaintiffs' churning counts due to failure to meet the specificity requirements of Rule 9(b). *See* Fed.R.Civ.P. 9(b). Plaintiffs' second amended complaint remedies this defect. It adds 12 new paragraphs setting forth in detail each plaintiff's initial investment, the dollar amount of purchases made, the average account equity, and the ending balance of the accounts. This constitutes sufficient information to calculate at least the turnover ratio for each plaintiff's account.

Defendants now argue that plaintiffs have failed to plead that the broker exercised control over the transactions of the accounts, a necessary element in a churning action. *See Costello v. Oppenheimer & Co.,* 711 F.2d 1361, 1368 (7th Cir.1983). Defendants further argue that plaintiffs' allegations that they never granted Gallagher absolute discretion indicates that plaintiffs, not defendants, exercised control. For the purposes of this motion, the court disagrees. A generous reading finds

that control by defendants is alleged; the court can infer from ¶¶ 21–26 of the second amended complaint that defendants, as a practical matter, decided which transactions should be made, despite plaintiffs' theoretical right to control their accounts. This inference is buttressed by plaintiffs' allegation in ¶ 12 that they are unsophisticated investors. *See id.*, n. 8. Counts V and VA therefore state claims upon which relief can be granted.

*Section 10(b) and Rule 10b–5 Claims*

■ The *Order* dismissed plaintiffs' Section 10(b) and Rule 10b–5 claims for failure to allege fraud "in connection with the purchase or sale of a security." *See* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. In *O'Brien v. Continental Illinois National Bank and Trust*, 593 F.2d 54 (7th Cir. 1979), the Seventh Circuit concluded that the relevant inquiry in determining whether a claim falls within the fundamental purpose of Section 10(b) "is whether plaintiffs were denied information that would or might have been useful to them in deciding whether to purchase or sell securities which they actually did purchase or sell." *O'Brien*, 593 F.2d at 60. Consequently, this court held that the first amended complaint's allegations of ¶ 15 are "inducements to open brokerage accounts and [were], therefore, unrelated to any decision to purchase or sell securities." *Capalbo v. PaineWebber, Inc.*, 672 F.Supp. at 1052.

Plaintiffs attempt to remedy this defect in two ways. First, plaintiffs originally alleged that they were induced to "open a brokerage account at PaineWebber and invest funds." *First Amended Complaint*, ¶ 14. Now, they allege they were induced to "open a brokerage account at PaineWebber and invest funds through PaineWebber to purchase option contracts." *Second Amended Complaint*, ¶ 14. This addition is insufficient to cure the defect described in the *Order*. In the *Order*, the court understood that brokerage accounts are opened to purchase securities. No violation of Section 10(b) and Rule 10b–5 was properly alleged, however, because the inducements were unrelated to any decision to purchase or sell particular securities.

■ Second, plaintiffs allege they retained a right to direct the handling of their invested funds, and therefore each particular transaction was decided upon by plaintiffs (this is what plaintiffs are arguing, as best the court can determine). This new allegation is insufficient to cure the original defect. Plaintiffs may have had a theoretical right to direct the transactions, but they still fail to allege any specific purchase or sale of a particular security which they decided upon based on a misrepresentation or omission of material fact. Consequently, Counts I and IA are dismissed.

*RICO Count*

■ Count IX of the Second Amended Complaint alleges violations of RICO. It alleges defendants churned plaintiffs' accounts, and thus committed "predicate acts" which constitute a "pattern of racketeering activity" in violation of § 1961 of RICO. It further alleges that defendants received income from this activity and used that income in the conduct of its own operations, thus violating § 1962(a) of RICO. It also alleges that defendants violated § 1962(b) of RICO. Section 1964(c) of RICO enables a private plaintiff to bring a civil suit based on violations of § 1962.

Plaintiffs' claim of violation of § 1962(b) is dismissed. Section 1962(b) makes it unlawful for any person to employ a "pattern of racketeering activity ... to acquire or maintain ... any interest in or control of any enterprise." The Second Amended Complaint contains no allegation that PaineWebber, through racketeering activity, acquired or maintained any interest in or control of any enterprise. Plaintiffs merely allege that any violation of § 1962(a) is automatically a violation of § 1962(b). Plaintiffs cite no authority for this proposition, and the court rejects it. Such an interpretation would render § 1962(a) superfluous.

■ Plaintiffs further allege that defendants invested the income derived from their racketeering activity in PaineWebber, and therefore "maintained" an interest in the enterprise. However, in *United States*

*v. Horak,* 833 F.2d 1235, 1241–43 (7th Cir. 1987), the Seventh Circuit held that a defendant does not "acquire or maintain" an interest in an enterprise simply because his racketeering activities "enhance" his performance within the enterprise. Instead, the *Horak* court determined that the words "acquired or maintained" compel a "but for" test under which it must be shown that defendant's racketeering activities were a "cause in fact" of the acquisition or maintenance of the interest allegedly obtained through the pattern of racketeering activity.[1] Plaintiffs do not allege any ability to meet the "but for" test enunciated in *Horak.* Therefore, plaintiffs' claim for violation of § 1962(b) of RICO is dismissed.

▆▆▆ Plaintiffs also allege defendants violated § 1962(a) of RICO. Defendants argue that because § 1964 provides a private cause of action for those injured by violations of § 1962, rather than § 1961, plaintiffs state no cause of action by merely alleging that they were injured by predicate acts committed by defendants. Predicate acts are described in § 1961, and § 1962(a) forbids investment of income derived from those acts in an enterprise. Defendants argue that a plaintiff must allege harm resulting from such investment (i.e., harm resulting from violation of § 1962), and that an allegation of harm due to the predicate acts of racketeering activity alone is not enough, because such an allegation only alleges harm due to violation of § 1961. Defendants cite two cases from the Northern District of Illinois which have so held. *See Donohoe v. Consolidated Operating & Production Corp.,* No. 86 C 7543, slip op. (N.D.Ill. January 8, 1987) [available on WESTLAW, 1987 WL 5226]; *Heritage Insurance Co. of America v. First National Bank of Cicero,* 629 F.Supp. 1412, 1417 (N.D.Ill.1986); *but see Haroco v. American Nat. Bank & Trust Co. of Chicago,* 647 F.Supp. 1026 (N.D.Ill. 1986) (on remand, held that for an action

under § 1962(a), harm from racketeering activity is sufficient to satisfy the proximate cause requirement of § 1964(c)).

The statute itself is ambiguous, and defendant's argument is plausible. However, the court finds the following interpretation of the statute to be more convincing. § 1962(a) forbids engaging in racketeering activities, as defined by § 1961, *and* investing the proceeds of that activity in an enterprise. Because § 1961 is labelled "definitions," and § 1962 is labelled "prohibited activities," it is § 1962 which forbids racketeering activity. Therefore, persons injured by either the racketeering activity or the investment of income from that activity have causes of action under § 1964.

Not only is this the more convincing statutory construction, but it is also more consistent with the Seventh Circuit's holding in *Haroco v. American Nat. Bank & Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), aff'd 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed. 2d 437 (1985), than the interpretation proposed by defendants. The *Haroco* court held that "a civil RICO plaintiff need not allege or prove injury beyond an injury to business or property resulting from the underlying acts of racketeering." *Id.* at 398. The court, however, limited its holding to § 1962(c); it did not consider the requirements for a cause of action under § 1962(a). *Id.* at 387. Nevertheless, the Seventh Circuit's reasoning seems applicable to § 1962(a). For example, the *Haroco* court stated:

> Limiting civil RICO recoveries to indirect victims would produce odd consequences and, in some cases of RICO violations, would prevent civil recoveries altogether. Consider, for example, a small business subjected to repeated extortionate demands for protection money. The business would surely be the victim of racketeering activity as defined in section 1961. And the owner might well be able to show that the extortionists violat-

---

**1.** *Horak* construed the words "acquired" and "maintained" as used in the analogous provision of § 1963(a), which pertains to forfeiture of interests "acquired or maintained in violation of section 1962." Since the language of § 1963(a) is virtually identical to the provisions of § 1962(b) (i.e., "acquire or maintain ... any interest in or control of any enterprise"), *Horak* is applicable to plaintiffs' § 1962(b) claim.

ed section 1962(c) by conducting the affairs of an enterprise through a pattern of racketeering activity. Yet, under an indirect injury requirement, the owner could not sue the extortionists under RICO; instead, RICO's provisions would be limited to indirect victims, if there were any, such as the extortionists' competitors.

*Id.* at 392. This reasoning applies to § 1962(a) violations as well. The Seventh Circuit found that the party injured by the racketeering activity itself should have a cause of action lest "odd consequences" result. The court sees no principled reason for limiting that analysis to § 1962(c) and not also applying it to § 1962(a).

 The *Haroco* court further interpreted the requirement in § 1964(c) that the plaintiff be injured "by reason of" a violation of § 1962 to be a simple imposition of a proximate cause requirement on plaintiffs. *Id.* at 398. As the *Haroco* court found that any injury caused by racketeering activity is caused by violation of § 1962(c), i.e., no separate injury must be demonstrated, it seems to follow that no separate injury need be alleged to state a cause of action under § 1962(a).

 Defendants next argue that no "pattern of racketeering activity" is alleged. First, defendants present the bizarre argument that because Gallagher is no longer employed by PaineWebber, the racketeering has ended, and is therefore not "continuing activity." This argument is absurd. If accepted, it would allow any RICO defendant to cease its criminal activity and by so doing escape liability for its previous acts.

 Defendants also argue that no "pattern" exists here. The court disagrees. The Seventh Circuit has interpreted the "pattern of racketeering activity" requirement in *Morgan v. Bank of Wauke-*

*gan*, 804 F.2d 970 (7th Cir.1986).[2] The court in *Morgan* noted the disagreement among the circuits on the issue, and concluded that in this circuit two predicate acts are necessary but not necessarily sufficient to form a pattern, and a case-by-case approach is warranted. The Seventh Circuit directs this court to consider the following when determining whether a case involves a pattern of racketeering activity: "the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries." *Id.* at 975. Applying this standard, the court holds that, as a matter of law, allegation of fraudulent inducement of 17 individuals to open accounts and fraudulent handling of those accounts for a period of 15 months is sufficient to allege a pattern of racketeering under RICO. Thus, defendants' motion to dismiss plaintiffs' RICO claim is granted as to the § 1962(b) claim and denied as to the § 1962(a) claim.[3]

### Breach of Fiduciary Duty Claim

 Defendants argue that plaintiffs fail to sufficiently plead a cause of action for breach of fiduciary duty. The court finds otherwise. Defendants' own memorandum cites *Martin v. Heinold Commodities, Inc.*, 117 Ill.2d 67, 109 Ill. Dec. 772, 510 N.E.2d 840 (1987) as stating:

> Within the scope of its agency, defendant is required to act on behalf of the plaintiff class and in its interest, refraining from acting in its own interest without first disclosing those facts which it has reason to believe would be material to the investment decisions made by members of the plaintiff class.

Certainly, churning accounts violates this standard. Churning is "a course of excessive trading through which a broker ad-

---

**2.** The Seventh Circuit has recently affirmed the *Morgan* standard. *See, e.g., Medical Emergency Service Associates v. Foulke,* 844 F.2d 391 (7th Cir.1988).

**3.** In a footnote, defendants argue that PaineWebber should be dismissed from the RICO count because it cannot be held liable under *responde-*

*at superior* for RICO violations of its employee, Gallagher. Plaintiffs did not respond. Because defendants do not present evidence that a securities broker is not so high-ranking that his actions are not also PaineWebber's actions, the court rejects the argument as applied to the facts of this case.

vances his own interests ... over those of his customer." *Costello v. Oppenheimer and Co.*, 711 F.2d at 1361. Therefore, churning violates the *Martin* standard.

### Jurisdiction Over Plaintiffs' State Law Claims

Plaintiffs allege that this court has diversity jurisdiction over its state law claims. Defendants argue that plaintiffs fail to meet the "amount in controversy" requirement. The court disagrees. Defendants argue that not every defendant lost $10,000 or more due to defendants' alleged wrongdoing. However, punitive as well as compensatory damages are to be considered in determining whether the requisite jurisdictional amount is alleged. *Loss v. Blankenship*, 673 F.2d 942, 951 (7th Cir.1982). Given the punitive damages claimed by plaintiffs, it is not a legal certainty that the total amount sought for compensatory and punitive damages will be less than the jurisdictional amount. *See Martin v. Granite City Steel Corp.*, 596 F.Supp. 293, 297 (S.D.Ill.1984).

Even if plaintiffs did not meet the amount in controversy requirement, the court would exercise pendent jurisdiction over the state law claims. Federal question claims have survived the motion to dismiss, and the state law claims involve the same "common nucleus of operative facts." *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### Defendant's Motion to Compel Arbitration

Defendant requested that the court dismiss plaintiffs' claims or, in the alternative, compel arbitration. Plaintiffs argue that defendants should not be allowed to ask the court to rule in its favor, or if it plans to rule for plaintiffs, compel arbitration instead. Were it alleged that the claims of every plaintiff should be submitted to arbitration, the court might well agree. However, since it is undisputed that at least five plaintiffs never agreed to compulsory arbitration, the court would have to rule on the motion to dismiss regardless of its ruling on the arbitration issue.

As for the merits of arbitration issue, PaineWebber argues that 12 of the 17 plaintiffs have signed arbitration agreements, while plaintiffs argue that only three have so done. Plaintiffs further argue that to the extent plaintiffs did sign arbitration agreements, defendants have waived their right to arbitration. However, because the parties have not yet completed discovery on whether there is an agreement to arbitrate between PaineWebber and these 12 plaintiffs, the court will defer ruling on the arbitration issue until that discovery is completed.

### Conclusion

In sum, Counts I, IA, and that portion of Count IX pertaining to § 1962(b) of RICO are dismissed. The motion to dismiss Counts V, VA, VI, VIA, VIIA, X, XI, and that portion of Count IX pertaining to § 1962(a) of RICO is denied. Ruling on the motion to compel arbitration is deferred pending completion of discovery.

IT IS SO ORDERED.