# In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 02-3103

TEAMSTERS NATIONAL AUTOMOTIVE TRANSPORTERS
INDUSTRY NEGOTIATING COMMITTEE, a labor organization,
and TEAMSTERS LOCAL UNION 745,

*Plaintiffs-Appellants*,

*v.*

DENNIS M. TROHA, Chairman and CEO of JHT Holdings,
Incorporated, JHT HOLDINGS, INCORPORATED, a Delaware
corporation, and ACTIVE TRANSPORTATION COMPANY,
a Kentucky limited liability company,

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02 C 504—**Rudolph T. Randa**, *Chief Judge.*

---

ARGUED FEBRUARY 19, 2003—DECIDED APRIL 29, 2003

---

Before FLAUM, *Chief Judge*, and COFFEY and KANNE,
*Circuit Judges.*

FLAUM, *Chief Judge.* The Teamsters Automobile Trans-
porters Industry National Negotiating Committee and
Teamsters Local Union 745 (collectively "the Teamsters")
brought an action to enforce an arbitration subpoena
against JHT Holdings, Inc. ("JHT"), and its Chairman and

CEO, Dennis Troha,[1] neither of whom are signatories to the collective bargaining agreement that forms the basis of the underlying arbitration. The district court, concluding that it lacked subject matter jurisdiction, dismissed the action, and the Teamsters appeal. We are presented with the question of whether a federal cause of action exists to enforce an arbitration subpoena against parties who were not signatories to the collective bargaining agreement that forms the basis for the arbitration. Because we find that a cause of action to enforce the subpoena does exist under federal common law, the district court had federal question jurisdiction over this suit. We therefore reverse the judgment of the district court.

## I. Background

Active Transportation Company and its subsidiary Active USA, Inc. (collectively "Active") operate a terminal in Garland, Texas. The Teamsters are the bargaining representatives for certain employees at Active's Garland

---

[1] Active Transportation Company, a signatory of the bargaining agreement, was also named as a defendant. At this point the dispute is whether the court has jurisdiction to enforce a subpoena against the non-signatories, and Active Transportation Company's role in this legal dispute is minimal and their brief generally adopts the arguments of Mr. Troha and JHT. Furthermore, it is not clear that Active Transportation Company is even a proper defendant. The Teamsters seek enforcement against Mr. Troha and JHT, and it is not apparent how the district court could have ordered relief from Active Transportation Company that could have redressed the Teamsters alleged injury. *Accord Am. Fed'n of Television and Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1013 n.6 (6th Cir. 1999) (Clay, J., dissenting) (questioning standing to bring this type of suit against the signatory when relief is only sought from the third-parties named in the subpoena).

terminal. The Teamsters and Active are signatories to the National Master Automobile Transporters Agreement and the Work Preservation Agreement (collectively "the bargaining agreements"). The Teamsters allege that on September 29, 2001, Active breached these bargaining agreements. The breach allegedly occurred when Active transferred work, previously performed at the terminal in Garland, to Auto Truck Transport Corporation ("Auto Truck"). According to the Teamsters this was an unauthorized transfer prohibited by the bargaining agreements. Pursuant to the rules set forth in the agreements, the Teamsters filed a grievance with a three-member Board of Arbitration.

The grievance, as would be expected, was filed against Active, the signatory of the bargaining agreements. But there are other parties involved. It seems that Active and Auto Truck are more than just business partners. In fact they share the same majority owner, Mr. Troha. Mr. Troha is also the Chairmen and CEO of JHT, which the Teamsters claim is a controlled affiliate of both Auto Truck and Active. Recognizing the involvement of these parties and seeking to resolve this dispute, the arbitration board issued a subpoena to Mr. Troha and JHT directing Mr. Troha to appear and testify as well as directing both Mr. Troha and JHT to produce numerous documents. Neither Mr. Troha nor JHT complied with the subpoena. On May 20, 2002, the Teamsters brought this action to enforce the subpoena. The district court concluded that it lacked subject matter jurisdiction because Mr. Troha and JHT were non-signatories to the underlying bargaining agreement. The district court dismissed the action, and the Teamsters appeal that ruling.

## II. Discussion

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction where it is specifically authorized

by federal statute. Recognizing this principle, the Teamsters turn to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, in an attempt to establish the authority for federal subject matter jurisdiction.[2] Still it is not clear from the briefs whether the Teamsters are attempting to establish jurisdiction directly under § 301(a) of the Labor-Management Relations Act, which provides that

> [s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties,

or indirectly under 28 U.S.C. § 1331, which provides that

> [t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States,

or under both.[3] This ambiguity is somewhat excusable given the fact that specific statutory grants of jurisdiction over federal causes of action are often largely superfluous given that the grant under § 1331 includes all civil actions where a federal law creates a federal cause of action. *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust For Southern Cal.*, 463 U.S. 1, 8-9 (1983). Still, the

---

[2] The Teamsters do not attempt to establish diversity jurisdiction under 28 U.S.C. § 1332.

[3] The jurisdictional statement in the Teamsters' opening brief cites § 1331, however this is the only reference in the entire brief to that statute and the statute does not appear anywhere in their reply brief. Reference to § 1331 was equally sparse during oral arguments.

provisions are nonetheless distinct sources under which a party may seek to establish subject matter jurisdiction. *See, e.g.*, *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. UAW*, 523 U.S. 653, 655 n.1 (1998) (holding that plaintiff was limited to arguing for jurisdiction under § 301 because Petition for Certiorari contained no reference to 28 U.S.C. § 1331). The distinction can be especially relevant where a party asserts jurisdiction under § 301 and not under § 1331. Specific jurisdictional provisions like § 301 are grants of jurisdiction over cases where the plaintiff is pressing a particular federal cause of action—in the § 301 context, causes of action brought "for violation of contracts between an employer and a labor organization." § 1331 jurisdiction, on the other hand, includes most causes of action, state or federal, where the plaintiff's right to relief necessarily depends on the resolution of a substantial federal question. *Franchise Tax Bd.*, 463 U.S. at 27-28.[4] Seeking to establish jurisdiction under § 301 alone and not under § 1331 may therefore limit a party to arguing that they are bringing a suit for violation of a collective bargaining agreement. For example, in *Textron* the Supreme Court rejected plaintiff's argument that "what would suffice to sustain a declaratory judgment action premised on § 1331 federal-question jurisdiction would suffice to sustain a declaratory judgment action brought under § 301(a)" because "the language of the two provisions is quite different." 523 U.S. at 660. The Court explained: "Whereas § 1331 authorizes 'civil actions arising under the . . . laws . . . of the United States' . . . § 301 authorizes only 'suits for violations of contracts.'" *Id.* All this being said, because of the inherent overlap in the

---

[4]  This statement "must be read with caution" as federal courts do not have jurisdiction over every single case that turns on the resolution of a federal question. *See Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 809 (1986).

provisions, we will construe the Teamsters' brief as assert-ing jurisdiction under both provisions.

We can dispense with the claim that jurisdiction exists under § 301 quickly. The § 301 grant of jurisdiction is extremely limited. The Supreme Court's holding in *Textron* emphasizes this narrowness. The plaintiffs in that suit sought a declaration that a contract was invalid. Relying on the specific statutory language of § 301, the *Textron* Court explained, "By its terms, this provision confers federal subject-matter jurisdiction only over 'suits for violations of contracts.'" *Id.* at 656. The Court reasoned that the phrase "for violations of contracts" encompassed only suits "filed *because a contract has been violated*" and therefore did not include "suits that claim a contract is invalid." *Id.* at 657. The Court concluded that "[b]ecause the Union's complaint alleges no violation of the collec-tive bargaining agreement, neither we nor the federal courts below have subject-matter jurisdiction over this case under § 301(a) of the Labor-Management Relations Act." *Id.* at 661. The holding of *Textron* is that only cases that allege violations of the collective bargaining agree-ment fall under the jurisdictional grant of § 301. Since only parties to a contract can violate it, a plaintiff cannot possibly allege that a non-party violated a collective bargaining agreement; therefore, the plaintiff cannot assert jurisdiction under § 301 to bring a federal action against the non-party.[5]

---

[5] Cases prior to *Textron* have read the § 301 grant more broadly, asserting that any suit that requires an interpretation of the collective bargaining agreement is *de facto* a suit "for violation" of the agreement. *See*, *e.g.*, *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1180 (7th Cir. 1993) ("The rule seems to be that if the plaintiff's claim, ostensibly based on state law, cannot be adjudicated without interpretation of the collective bargaining

(continued...)

The question of § 1331 jurisdiction is more challenging. The first question for us to address is whether the plaintiffs are asserting a federal cause of action. If the plaintiffs are asserting such a cause of action then § 1331 plainly creates jurisdiction because the suit would arise under federal law. This question is complicated because the Supreme Court has determined that § 301, beyond expressly authorizing the federal courts to hear suits brought for violations of collective bargaining agreements, also authorizes the federal courts to fashion a body of common law for the enforcement of the collective bargaining agreements over which they have jurisdiction. *Textile Workers Union of Am. v. Lincoln Mills*, 353 U.S. 448 (1957). In general we have viewed this authorization to create fed-

---

[5] (...continued)

agreement, the claim turns into a federal claim that the agreement itself has been violated."); *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 709 (7th Cir. 1992) ("[T]he Supreme Court treats any attempt to interpret, enforce, or question a collective bargaining agreement as necessarily based on national law."); *see also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988) (holding that where interpretation of the agreement is required, state-law is pre-empted). But even under that analysis an action to enforce an arbitration subpoena still does not fall under the § 301 grant of jurisdiction. Mr. Troha and JHT's duty to provide information or testimony to the arbitration board that is trying to determine whether Active breached a collective bargaining agreement cannot logically be dependent upon a determination of whether Active actually did breach the agreement. If such a determination were necessary, the result would be absurd. The Teamsters would have to prove that Active breached the agreement in order to subpoena information from JHT and Mr. Troha. But the only reason the Teamsters want the information from JHT and Troha is to prove that Active breached the agreement. *See Lingle*, 486 U.S. at 406 ("[A]s long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.").

eral law under § 301 as limited to disputes between signatories of the collective bargaining agreement. *See Loss v. Blankenship*, 673 F.2d 942, 958 (7th Cir. 1982) ("We hold, therefore, that a complaint for interference with a collective bargaining agreement, against a non-party to that agreement, is not actionable under § 301(a) of the LMRA."), and at 946 ("'§ 301 suits are confined to defendants who are signatories of the collective bargaining agreement under which they are brought.'") (quoting *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210 (5th Cir. 1980)). But this rule is not absolute. Indeed, the limitation is more aptly described not in terms of parties but in terms of the purpose of a lawsuit. *See, e.g., Wooddell v. Intern'l Bhd. of Elec. Workers*, 502 U.S. 93 (1991); *Smith v. Evening News Ass'n*, 371 U.S. 195 (1962). When the purpose of the lawsuit effectuates the goals of § 301, then it is appropriate for federal common law to embrace such suits. The Court in *Lincoln Mills* explained the reason for authorizing the creation of federal common law in this area:

> [T]he legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained in only that way.
>
>   . . . And when the House debate narrowed to the question of whether § 301 was more than jurisdictional, it became abundantly clear that the purpose of the section was to provide the necessary legal remedies.

*Lincoln Mills*, 353 U.S. at 455. With enforcement of these agreements and the provision of necessary legal remedies as our guides it becomes clear that *Lincoln Mills* envisions the creation of federal common law to enforce arbitration subpoenas. A collective bargaining agreement that requires arbitration is powerless if the parties to the arbitration cannot present evidence in the form of third

person testimony or documents possessed by third parties. Enforcement of an agreement to arbitrate cannot provide the "necessary legal remedy" if the parties to the arbitration have no means of securing valuable evidence other than their own testimony.

Viewed in this light, today's case is distinguishable from *Loss*. We held that the plaintiff in *Loss* failed to state a federal claim not because the defendant was a third party, but because the tortious interference suit was not necessary to the purpose of enforcing the collective bargaining agreement between the signatories. Suits for enforcement of an arbitration subpoena, on the other hand, have a great impact on the arbitration process and are necessary to the purpose of enforcing the agreement to arbitrate. It is therefore appropriate to apply the reach of federal common law to ensure that such subpoenas do not go unenforced.

This conclusion finds support in § 7 of the Federal Arbitration Act (FAA), 9 U.S.C. § 7. Although the FAA does not apply in this case, the reasoning behind the act is instructive in fashioning federal common law. § 7 provides that in an arbitration covered by the FAA an arbitrator may issue a subpoena, and

> if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

*Id.* The same principles underlying the Congressional decision to create an enforcement mechanism for arbitration subpoenas under the FAA apply to the arbitrations

pursuant to collective bargaining agreements even when those arbitrations do not fall under the application of the FAA. *See United Paperworkers Intern'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n.9 (1987) ("Federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law."); *see also American Fed'n of Television and Radio Artists v. WJBK-TV*, 164 F.3d 1004, 1009 (6th Cir. 1999) (applying the reasoning of the FAA in holding that an arbitration subpoena could be enforced in federal court without deciding whether the FAA itself applied to the case before it).

We therefore hold that federal common law under § 301 creates a cause of action by which a party to a collective bargaining agreement that is otherwise covered by § 301 can enforce an arbitration subpoena against a non-signatory of the agreement. In turn, because the cause of action arises under federal common law, the district court had jurisdiction over the action under 28 U.S.C. §1331.

## III.  Conclusion

For the reasons stated above the district court's dismissal of this case is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

      Teste:

               _____

               *Clerk of the United States Court of Appeals for the Seventh Circuit*